UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

YUNIOR GONZALEZ GARCIA,

          Plaintiff,

v.

WARDEN, SOUTH FLORIDA
DETENTION FACILITY, U.S.
ATTORNEY GENERAL,

          Defendants.

Case No. 2:26-cv-1143-KCD-NPM

_____/

## ORDER

Petitioner Yunior Gonzalez Garcia has filed a habeas corpus petition challenging his detention by U.S. Immigration & Customs Enforcement ("ICE"). (Doc. 1.)[1] He claims that the Attorney General is holding him without a bond hearing in violation of the Immigration and Nationality Act ("INA") and the Fifth Amendment. (*Id.* at 7-8.) Respondents oppose the petition. (Doc. 8.)

## I. Background

Garcia is a citizen of Cuba. In April 2022, he entered the United States by swimming across the Rio Grande. He was apprehended, and after a brief interview, an immigration officer denied him admission. (Doc. 8-2.) But the

---

[1] Unless otherwise indicated, all internal quotation marks, citations, case history, and alterations have been omitted in this and later citations.

Government did not keep him in custody. Instead, it handed Garcia a notice to appear for removal proceedings and released him into the country. (Doc. 8-3.)

For nearly four years, Garcia remained in the country and complied with his conditions of release. Then, on January 8, 2026, ICE agents arrested him in Miami. He has been in custody ever since because the Government claims he is subject to mandatory, no-bond detention under 8 U.S.C. § 1225(b)(2)(A). (Doc. 8 at 2.) Unwilling to wait behind bars indefinitely, Garcia filed this petition for a writ of habeas corpus under 28 U.S.C. § 2241.

## II. Legal Standard

The federal habeas statute, 28 U.S.C. § 2241, provides authority to issue writs of habeas corpus when an individual is "[i]n custody in violation of the Constitution or laws or treaties of the United States." *Id.* § 2241(c)(3). "At its historical core, the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). "Section 2241 authorizes federal courts to hear challenges to immigration detention." *Grigorian v. Bondi*, No. 25-CV-22914-RAR, 2025 WL 2604573, at *2 (S.D. Fla. Sept. 9, 2025).

2

### III. Discussion

American immigration law has long rested on a basic geographic distinction. For more than a century, the rules have changed depending on which side of the border a person stands. When a noncitizen arrives at our doorstep—stopped at the boundary line, having gained no foothold—the Constitution's protections are at their lowest ebb. *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 138 (2020). But cross into the interior, and the legal landscape shifts. "[T]he Due Process Clause applies to all persons within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). This simple inside-outside dichotomy is the fault line running through all of immigration law.

Congress wrote this geographic divide directly into the immigration code. When the Government wants to detain a noncitizen waiting for a final removal order, it must look to one of two statutes: 8 U.S.C. § 1225 and § 1226. Which one applies depends on where the noncitizen is standing. As concisely summarized by the Supreme Court: "U.S. immigration law authorizes the Government to detain certain aliens seeking admission into the country under §§ 1225(b)(1) and (b)(2). It also authorizes the Government to detain certain aliens already in the country pending the outcome of removal

proceedings under §§ 1226(a) and (c)." *Jennings v. Rodriguez*, 583 U.S. 281, 289 (2018).

Under § 1225, an alien who "arrives in the United States," or "is present" in this country but "has not been admitted," is treated as an "applicant for admission." 8 U.S.C. § 1225(a)(1). Applicants for admission can be detained pending removal under two separate provisions: § 1225(b)(1) and § 1225(b)(2).

Section 1225(b)(1) targets a specific slice of noncitizens: those who are quite literally arriving at our doorstep, or who crossed the border unlawfully less than two years ago, and who either lack proper papers or used fraud to try to get in. *See* 8 U.S.C. §§ 1225(b)(1)(A)(i), (iii); §§ 1182(a)(6)(C), (a)(7). For this group, Congress designed a fast-track system. The statute mandates expedited removal, entirely bypassing the usual hearings and layers of review. But there is an important caveat. If an individual expresses a fear of persecution or an intent to seek asylum, the fast-track removal hits pause. In exchange, the statute imposes a strict condition: the Government must detain the individual—mandatorily and without bond—while an officer vets their asylum claim. And, if the claim fails, until they are removed. *See* § 1225(b)(1)(B); *Make the Rd. N.Y. v. Wolf*, 962 F.3d 612, 618-20 (D.C. Cir. 2020) (summarizing expedited removal provisions).

Section 1225(b)(2) is a "catchall provision" that applies to most other applicants for admission. *Jennings*, 583 U.S. at 281. For this group, Congress swapped the fast track for the standard route, placing them in ordinary removal proceedings before an immigration judge. *See* §§ 1225(b)(2)(A), 1229a. But here is the rub: even though these individuals get a full hearing, they generally do not get to wait for it at home. With only limited exceptions, § 1225(b)(2) "mandate[s] detention of applicants for admission until certain proceedings have concluded." *Jennings*, 583 U.S. at 297. So, boiled down, aliens falling under § 1225 are categorically not entitled to a bond hearing.

Meanwhile, § 1226 "authorizes the Government to detain certain aliens already in the country pending the outcome of removal proceedings." *Jennings*, 583 U.S. at 289. For this group—individuals who have crossed the boundary line and are physically present inside the United States—Congress split the detention rules into two separate tracks: §§ 1226(a) and 1226(c).

Section 1226(a) sets the baseline rule for this interior group, and its defining feature is discretion. "On a warrant issued by the Attorney General, an alien *may* be arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a) (emphasis added). So, unlike the rigid lock-up commands of § 1225, § 1226(a) leaves the jailhouse door unlocked, explicitly allowing for release on bond. The regulations spell out exactly how a noncitizen can secure that release: by

5

showing they are neither a danger to the community nor a flight risk. *See* 8 C.F.R. §§ 236.1(c)(8), 1236.1(c)(8). While immigration officers get the first crack at setting those custody conditions, if the initial answer is no, the noncitizen can request an individualized bond hearing before an immigration judge. *See Jennings*, 583 U.S. at 306.

Finally, § 1226(c) "carves out a statutory category of aliens who may not be released." *Jennings*, 583 U.S. at 289. If an alien has committed certain crimes, the opportunity for a bond hearing vanishes, and detention becomes mandatory. *See* 8 U.S.C. § 1226(c). Such criminal aliens may be released only under very narrow circumstances involving a determination by the Attorney General. *Id.* § 1226(c)(4).

Turning back to the facts here, Garcia has been detained by immigration officials for several months without a chance at release. As best the Court can tell, he argues that he is entitled to a bond hearing under § 1226(a) or the Fifth Amendment. (Doc. 1 at 7.) The Government, however, insists that § 1225(b)(2) firmly applies to Garcia, which makes his detention mandatory. (Doc. 8.)

This Court has previously held that aliens stopped at the border and released into the country, like Garcia, fall under § 1225(b)(2). *See, e.g.*, *Lopez v. Hardin*, No. 2:25-CV-830-KCD-NPM, 2025 WL 3022245, at *4 (M.D. Fla. Oct. 29, 2025). But the Eleventh Circuit's latest decision in this area now

dictates a different result. *See Hernandez Alvarez v. Warden, Fed. Det. Ctr. Miami*, No. 25-14065, 2026 WL 1243395, at *1 (11th Cir. May 6, 2026).

"The text of § 1225(b)(2)(A) is clear that mandatory detention applies only to a narrower category of applicants for admission: those seeking lawful entry into the United States." *Id.* at *13. To trigger § 1225(b)(2)(A), an alien must be (1) "arriving in the United States or is present in the United States without having been granted lawful entry; (2) is seeking lawful entry after inspection and authorization by an immigration officer; and (3) is not clearly and beyond a doubt entitled to lawful entry, as determined by the examining immigration officer." *Id.* at *8.

Garcia easily checks the first box: he is present in the United States without lawful entry. The paperwork the Government issued to him proves the point. When agents handed Garcia a Notice to Appear and released him into the interior, they gave him a physical foothold, but nothing more. The document charges him as a noncitizen subject to removal precisely *because* he had not been admitted or paroled into the United States. (Doc. 8-2.) So Garcia was not lawfully admitted in the required sense. *See Hernandez Alvarez*, 2026 WL 1243395, at *7 ("[A]n alien may be lawfully present in the United States, but nevertheless not admitted.").

But the Government's argument crumbles on the second requirement. Garcia is not "seeking lawful entry." *Hernandez Alvarez*, 2026 WL 1243395,

7

at *8. "[T]he act of seeking admission constitutes the pursuit of lawful entry . . . after inspection and authorization by an immigration officer." *Id.* at *7. That question was asked *and answered* at the border years ago. An immigration officer already evaluated Garcia's arrival, explicitly denied him lawful entry, and chose instead to release him into the interior of the country to await standard removal proceedings. The upshot is simple—Garcia is "not seeking or pursuing any object, let alone lawful entry." *Id.* at *8. Lawful entry has been decided, so Garcia falls outside the grip of § 1225(b)(2)(A).

Section "1225 applies to arriving aliens seeking entry at the border, whereas § 1226 applies to aliens unlawfully in the interior." *Hernandez Alvarez*, 2026 WL 1243395, at *14. Garcia falls into the latter category, so the "[f]ederal regulations provide that [he] receive a bond hearing." *Jennings*, 583 U.S. at 306.

Garcia seems to request his immediate release from custody. But that is not something the Court will do. "[Section] 1226(a)(1) grants the executive branch discretion to determine whether to detain or release a noncitizen who is facing removal proceedings." *Hulke v. Schmidt*, 572 F. Supp. 3d 593, 596 (E.D. Wis. 2021). Garcia is an alien without lawful status. So he is entitled to a bond hearing under § 1226(a), not immediate release. *See, e.g., Lopez-Arevelo v. Ripa*, 801 F. Supp. 3d 668 (W.D. Tex. 2025). Consistent with the "comfortable majority position," the Court will instead require the

8

Government to provide Garcia with the statutory process required under §

1226(a), which includes a bond hearing. *Id.*

To the extent Garcia also seeks relief under the Fifth Amendment, such

claims are not addressed "given that the Court [is granting] the relief [he is

entitled to] based on its interpretation of the applicability of § 1226(a)."

*Pizarro Reyes v. Raycraft*, No. 25-cv-12546, 2025 WL 2609425, at *8 (E.D.

Mich. Sept. 9, 2025). If the Government does not provide Garcia with a bond

hearing as ordered or he remains in custody, he can renew any other claims

in a subsequent suit.

## IV. Conclusion

Accordingly, the Petition for Writ of Habeas Corpus (Doc. 1) is

**GRANTED IN PART AND DENIED IN PART**. The Court orders the

Government to provide Petitioner with the statutory process required under §

1226, which includes a bond hearing. All other relief is **DENIED**. The Clerk

is directed to terminate any pending motions and deadlines and close the

case.

**ORDERED** in Fort Myers, Florida on May 14, 2026.

Kyle C. Dudek
United States District Judge

9